UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| TECK COMINCO METALS, LTD., | ) | No. 05-CV-0411-LRS |
| | ) | |
| Plaintiffs, | ) | ORDER DENYING MOTION TO |
| | ) | DISMISS FOR LACK OF |
| v. | ) | JURISDICTION; DENYING MOTION |
| | ) | TO DISMISS PURSUANT TO |
| SEATON INSURANCE COMPANY, et | ) | DOCTRINE OF *FORUM NON* |
| al., | ) | *CONVENIENS*; GRANTING IN PART |
| | ) | MOTION TO STRIKE EVIDENCE; |
| | ) | AND GRANTING MOTION FOR |
| Defendants. | | LEAVE TO AMEND COMPLAINT, |
| | | *INTER ALIA* |
| | | ***CLERK ACTION REQUIRED*** |

Before the court are defendants Lombard Insurance (Lombard) and
London Market Insurers' (LMI) motions to dismiss for lack of
personal jurisdiction and *forum non conveniens*. (Ct. Rec. 57, 62,
64, 71). In addition, Seaton Insurance Company (Seaton) has joined
in Lombard and LMI's motion to dismiss pursuant to the doctrine of
*forum non conveniens*. (Ct. Rec. 127). Also before the court are
Lombard's motion to strike certain evidence submitted by plaintiff
Teck Cominco Metals, Inc. (TCML) in its responsive pleadings (Ct.
Rec. 159) and TCML's motion for leave to file a third Amended
Complaint. (Ct. Rec. 108). Appearing at oral argument on April 6,
2006, in Yakima, Washington were attorneys Cathy Spicer,
representing LMI; Brett Sommermeyer and Joseph Hampton, representing

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 1

1  Lombard; Brad Smith, representing Seaton; and Jerry Moberg, Mark
2  Plumer and David Klein, representing TCML.

3                              **BACKGROUND**

4       TCML is a Canadian corporation with a lead and zinc smelting
5  operation in Trail, British Columbia (B.C.).  The operations yield
6  a by-product called "barren slag."  The Trail facility has been in
7  operation since the early 1900's.  Recent annual reports indicate
8  the operations use over 60 million gallons of water a day from the
9  Columbia River, returning it to the river after use. (Ct. Rec.  111-
10  1 at 8). The Columbia River flows into Washington state seven miles
11  south of the Trail facility.  After the Grand Coulee Dam was
12  constructed in 1940's, barren slag began to accumulate in the Upper
13  Columbia River and newly formed Lake Roosevelt, located just south
14  of the Canada-Washington  border.  In 2003, TCML was cited by the
15  United States (U.S.) Department of Ecology under the Comprehensive
16  Environmental Response, Compensation, and Liability Act (CERCLA) for
17  polluting the Upper Columbia River/Lake Roosevelt area.  In a CERCLA
18  authorized citizen suit, certain individuals, the Colville Indian
19  Tribe and the State of Washington brought an action in U.S. District
20  Court for the Eastern District of Washington against TCML for CERCLA
21  violations and damage to Washington property resulting from the
22  smelter discharge (CERCLA Action). (*Pakootas, et al, v. Teck*, cause
23  number CV-04-0256-AAM).  In denying TCML's motion to dismiss, the
24  district court found it had subject matter jurisdiction under CERCLA
25  and personal jurisdiction over TCML.  (Ct. Rec. 115).  The court
26  then certified its decision for immediate interlocutory appeal to
27  the Ninth Circuit.  That appeal is pending.

28  ORDER DENYING DEFS' MOTIONS TO DISMISS,
    GRANTING IN PART DEFS' MOTION TO STRIKE,
    AND GRANTING PL'S MOTION FOR LEAVE TO
    AMEND, *ETC*. - 2

In the instant action, TCML is suing for a declaratory judgment that the defendant insurers which issued primary and excess liability policies in 1970-76, have (1) a duty to defend TCML in the CERCLA Action, and (2) a duty to indemnify and pay defense expenses. (Ct. Rec. 55, SECOND Amended Complaint).

The defendants in the declaratory judgment action are:

Seaton Insurance Company (Seaton), a U.S. corporation registered to do business in Washington; Lombard General Insurance Company of Canada (Lombard), a Canadian corporation with its principal place of business in Toronto; London Market Insurers and certain underwriters at Lloyd's of London (collectively, LMI); and Continental Insurance Company (Continental), a U.S. corporation and subsidiary of CNA Financial Corporation.

Lombard acquired the underlying primary umbrella policies (Umbrella Policies) in 1995 through a series of corporate transactions. The Umbrella Policies were initially issued by the Continental Insurance Companies (CIC), a U.S. corporation registered to do business in Washington, with offices in B.C.[1]  Lombard acknowledges that it is CIC's successor in interest. (Ct. Rec. 135-2, Ex. A at 8).  The Umbrella Policies specifically covered Cominco facilities in Washington and other states, as well as the Trail facility.  (Ct. Rec. 67, Ex. 1 and 2; Ct. Rec. 111 at 3).

The Lloyd's of London defendants are a conglomeration of unincorporated syndicates whose principal place of business is

---

[1]  TCML's predecessor, Cominco Limited, was the insured under the Umbrella Policies.

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 3

London; the London Market defendants are British companies doing business in the London insurance market with headquarters throughout the world. (Ct. Rec. 57 at 4). LMI issued excess policies (Excess Umbrella Policies) that attach after the Umbrella Policies have been paid in full. (Ct. Rec 79-2 at 9).

**DISCUSSION**

A.   Motion to Dismiss for Lack of Personal Jurisdiction

Although Lombard and LMI are the moving parties on the motions to dismiss, TCML is the party which invoked the court's jurisdiction and bears the burden of proving the necessary jurisdictional facts. *Flynt Distributing Co. Inc., v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1984). Where the court is acting on a defendant's motion to dismiss for lack of personal jurisdiction, plaintiff need only make a *prima facie* showing of jurisdiction to avoid dismissal. Conflicts between the facts alleged in the parties' pleadings are resolved in the plaintiff's favor. *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003). *See also Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977). Motions to dismiss under Rule 12(b)(2) may test either the plaintiff's theory of jurisdiction or the facts supporting the theory. In evaluating a plaintiff's jurisdictional theory, the court need only determine whether the facts alleged, if true, are sufficient to establish jurisdiction. *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 153 (2nd Cir. 1999). When the plaintiff avoids a Rule 12(b)(2) dismissal by making a *prima facie* showing, he must still prove jurisdictional facts by a preponderance of the evidence at trial. *Data Disc*, 557

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 4

1  F.2d 1280 at n.2.

2      The relevant facts alleged by TCML in its *prima facie* showing,

3  which the court must accept as true unless plainly controverted in

4  the record, are: Lombard's predecessor in interest, CIC, was a U.S.

5  corporation registered to do business in Washington, with no

6  distinct corporate identity in Canada at the time the Umbrella

7  Policies were issued; CIC insured risks in Washington and other

8  states in the same policy that insured the Trail facility; the LMI

9  policies were excess insurance policies covering the same facilities

10  and risks listed in the Umbrella Policies; one of the Excess

11  Umbrella Policies included an insurance certificate stating

12  specifically that LMI will submit to United States jurisdiction if

13  requested by the insured (Ct. Rec. 111-4, Ex. Cl at 2)[2]; risk

14  assessment information that explained the Trail facility's practice

15  of the use and return of millions of gallons of water to the

16  Columbia River, approximately 7 miles from the Washington border was

17  sent to the insurers by TCML (Ct. Rec. 111-1 at 8).

18  _____

19      [2]  In its pleadings and at oral argument, LMI denied that its

20  excess policies included this service of suit clause; however, the

21  documentation filed by LMI does not clearly controvert the service

22  of suit clause attached to policies submitted by TCML. Under the

23  motion to dismiss standard, the court accepts TCML's alleged fact

24  as true. Notwithstanding this service of suit clause, as discussed

25  in the body of this decision, LMI is subject to specific

26

27  jurisdiction by Washington's long arm statute.

28  ORDER DENYING DEFS' MOTIONS TO DISMISS,
   GRANTING IN PART DEFS' MOTION TO STRIKE,
   AND GRANTING PL'S MOTION FOR LEAVE TO
   AMEND, *ETC*. - 5

Where there is no federal statute governing personal jurisdiction, district court must look to the law of the forum state in determining whether it may exercise personal jurisdiction over an out of state defendant. *Rutsky*, 328 at 1129 (*citing Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). General jurisdiction (any cause of action) may be exercised by federal court if the defendant's contacts with the forum state are "substantial, continuous, and systematic." *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 445, 72 S.Ct. 413 (1952).[3] "Specific" or "limited" jurisdiction may be exercised if there is a showing that:

(1) the out of state defendant purposefully directed its

_____

[3] Although the parties have not clearly argued general jurisdiction, Lombard's predecessor CIC was registered to do business in Washington.  London Markets' and Lloyd's of London's contacts with Washington are arguably continuous and systematic as evidenced by the number of times they have been parties to litigation in the Ninth Circuit and the State of Washington. *See e.g. Professional Marine Co. v. Those Certain Underwriters at Lloyd's of London*, 118 Wn.App. 694, 705 (2003) (trial court's conclusion it had jurisdiction over Lloyd's under RCW 48.05.215(1) not challenged by Lloyd's on appeal).  These facts strengthen TCML's argument that personal jurisdiction over the non-resident insurers is reasonable.

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 6

activities toward residents of the forum state or otherwise established contacts with the forum state;

(2) plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

(3) the forum state's exercise of personal jurisdiction in the particular case is reasonable in that it comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-76, 105 S.Ct. 2174 (1985). The defendant must have purposefully directed its activities at forum residents, or purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of local law. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958). This protects against a non-resident defendant being haled into local courts solely as a result of random, attenuated contacts. *Burger King*, 471 U.S. at 475. "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980).

If a non-resident defendant has deliberately engaged in significant activities within the forum state, "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476. Furthermore, if defendant "purposefully had directed his activities at forum residents . . . he must present a compelling case" that the exercise of jurisdiction would in fact be unreasonable. *Id*. at 477.

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 7

1      1.    Washington's Long Arm Statute

2          Washington's long-arm statute authorizes courts to exercise

3   specific jurisdiction over a non-resident defendant "to the extent

4   permitted by the due process clause of the U.S. Constitution."

5   State of Washington v. www.Dirtcheapcig.com, Inc., 260 F.Supp.2d

6   1048, 1051 (W.D. Wash. 2003)(citations omitted).   The long arm

7   statute confers personal jurisdiction over a non-resident defendant

8   who transacts any business within the state or contracts "to insure

9   any person, property or risk located within this state at the time

10  of contracting." RCW 4.28.185 (1)(a) and (d).   The statute further

11  states that "only causes of action arising from acts enumerated

12  herein may be asserted against a defendant in an action in which

13  jurisdiction over him is based upon this section." RCW 4.28.185(3).

14         Defendants contend the long arm statute does not reach them

15  because (1) they did not insure "property or risk located within the

16  state" of Washington at the time of contracting, and (2) TCML's

17  claim arises from alleged pollution caused by the Trail, B.C.

18  facility, not any insured risk within Washington.

19         It is undisputed that at the time of contracting, Lombard's

20  predecessor in interest was a U.S. corporation registered to

21  transact business in Washington since 1890. (Ct. Rec. 104,

22  Attachment A.)   Lombard acknowledges it acquired the Umbrella

23  Policies from CIC and it is responsible for its predecessor's

24  obligations. (Ct. Rec. 76-1 at 4).   Documentation in the record

25  also establishes that the Umbrella Policies, and consequently the

26

27

28  ORDER DENYING DEFS' MOTIONS TO DISMISS,
    GRANTING IN PART DEFS' MOTION TO STRIKE,
    AND GRANTING PL'S MOTION FOR LEAVE TO
    AMEND, ETC. - 8

Excess Umbrella Policies,[4] insured Cominco American, Inc. with facilities in Washington and other states, as well as multiple sites around the world.   The terms of the Umbrella Policies applied to all of TCML's listed sites.   (Ct. Rec. 67, Exhibits 1 and 2). Therefore, both Lombard's predecessor and LMI contracted to insure property within Washington at the time of contracting, consistent with RCW 4.28.185(d).

      Defendants further argue that TCML's claims do not arise from the forum-related activities as required by RCW 4.28.185(3), which states: "[o]nly causes of action arising from <u>acts enumerated herein</u>

─────────────────────

      [4]  The Excess Umbrella Policy language in the record states: "Underwriters hereby agree, . . . to indemnify the assured for all sums which the assured shall be obligated to pay by reason of the liability . . . for damages, . . . on account of . . . property damage . . . arising out of the hazards covered by and as defined in the underlying umbrella policies . . . . It is expressly agreed that liability shall attach to the Underwriters only after the underlying umbrella insurers have paid or have been held liable to pay the full amount of their respective ultimate net loss liability . . . This Policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability . . .) as are contained in or as may be added to the Underlying Umbrella Policy/ies . . . .  (Ct. Rec. 111, Ex. C-2).

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 9

1  may be asserted against a defendant in an action in which

2  jurisdiction over him is based upon this section." RCW 4.28.185(3)

3  (emphasis added). Defendants contend that TCML's instant cause of

4  action arises from the Trail, B.C. facility, not from any facility

5  located in the state of Washington. However, it is the act of

6  contracting to insure that gives rise to TCML's instant claim.

7    TCML requests a declaratory judgment regarding defendants'

8  obligations under two contracts, entered into by Lombard's

9  predecessor insurer, doing business in Washington, and insuring,

10 among other property and risks, property located in Washington. As

11 an excess policy insurer, LMI's obligations follow those of Lombard.

12  "But for" the defendants' contracting to insure TCML's property in

13 Washington and other locations, and their alleged refusal to honor

14 these contracts, TCML would not be bringing this action. *See*

15 *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995)("but for" test

16 relied upon by Ninth Circuit in determining second prong of specific

17 jurisdiction test). Because the instant cause of action arises from

18 a dispute over insurance contracts which constitute the insurers'

19 contact with Washington, the second prong for specific jurisdiction

20 is satisfied. *Haisten v. Graff Vally Medical Reimbursement Fund*

21 *Ltd.*, 784 F.2d 1392, 1400 (9th Cir 1986).

22    2.  Due Process

23    Even if the court finds Washington's long arm statute confers

24 personal jurisdiction, exercise of personal jurisdiction must

25 comport with due process under the U.S. Constitution. *Flynt*, 734

26 F.2d at 1392. Due process requires a defendant have "certain

27 minimum contacts with the [forum state] such that the maintenance of

28 ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 10

the suit does not offend 'traditional notions of fair play and substantial justice.'"   *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945)(citations omitted).   The forum state must have a sufficient relationship with the defendants and the litigation to make it reasonable to require them to defend the action in a federal court located in that state. The purpose of the "minimum contacts" requirement is to protect a defendant against the burdens of litigating in a distant forum and to ensure that states do not overstep limits to their sovereignty within the federal system.   *World-Wide Volkswagen*, 444 U.S. at 291. The Ninth Circuit has held that "jurisdiction may be exercised with a *lesser showing of minimum contacts* than otherwise would be required if considerations of reasonableness dictate." *Haisten*, 784 F.2d at 1397(*citing Burger King*, 471 U.S. at 477).

Lombard and LMI attempt to defeat the foreseeability element by denying any expectation of being haled into Washington, or the U.S., for contract interpretation.   They urge the court to differentiate between litigation over damages and litigation over coverage.   The court finds this argument unpersuasive, based on the very terms of the Umbrella Policies, which provide that claims arising in certain countries (*e.g.* Albania, Bulgaria, Cuba, etc.) "are covered only if the claim based thereon is initially made or suit to recover therefor is originally brought within Canada or the United States of America. . . ." (Ct. Rec. 76, Ex. 1 and 2 at pp. 1, 3)(emphasis added).   The Umbrella Policies themselves attest to the insurers' expectations that they would be haled into U.S. courts for claims and suits to recover.   This clause not only satisfies the

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 11

foreseeability test, it also bolsters the degree of purposeful availment, in that the insurers clearly anticipated invoking the benefits and protection of U.S. courts. *Hanson*, 357 U.S. at 253. Finally, the Ninth Circuit has specifically held that where an insurer has contracted to indemnify and defend an insured for claims that will "foreseeably result in litigation in foreign states, . . . litigation requiring the presence of the insurer" is not only foreseeable, but also purposefully contracted for by the insured. *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 914 (9th Cir. 1990). This applies not only to the insurer's presence in its duty to defend in foreign states, but also in contract disputes regarding coverage. *Id.*

Lombard and LMI's purposeful contracting constitutes the "minimum contacts" requirement in the specific jurisdiction test articulated in *Burger King,* 471 U.S. at 474, and the instant claim arises out of the insurers' forum contact (i.e. the insurance contracts). The final test is one of "reasonableness." In determining the "reasonableness" of exercising personal jurisdiction, the following facts must be considered:

1. the extent of defendants' purposeful interjection;

2. the burden on defendant in defending in the forum;

3. the extent of conflict with the sovereignty of the defendants' state;

4. the forum state's interest in adjudicating the dispute;

5. the most efficient judicial resolution to the controversy;

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 12

6.    the importance of the forum to plaintiff's interest in convenient and effective relief; and

7.    the existence of an alternative forum.

*Core-Vent*, 11 F.3d. at 1487-88.

*Purposeful interjection of defendants*

Although the degree of purposeful interjection is considered in the reasonableness analysis, the extent of minimal contacts is given little to no weight when other factors favor personal jurisdiction. *See Core-Vent*, 11 F.3d at 1488 (little consideration given); *c.f. Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) and *Haisten*, 784 F.2d at 1402 (no consideration given to purposeful interjection factor once availment shown). As discussed below, the other "reasonableness" factors here strongly favor personal jurisdiction; therefore, the extent of purposeful interjection is given minimal weight in the court's analysis. *See Burger King*, 471 U.S. at 477.

*Burden on defendants*

"Modern advances in communications and transportation have significantly reduced the burden of litigating in another country." Further, the burden on the defendants is assessed in light of the corresponding burden on the plaintiff. *Sinatra*, 854 F.2d at 1199. Yakima, Washington, where this court sits, and Vancouver, B.C., defendants' preferred forum, are within 250 miles of each other and are adequately served with modern modes of transportation. The insured facility in Canada is actually closer to the federal courts in the Eastern District of Washington than the courts in Vancouver, B.C. English is the official language in both forums. Neither LMI

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 13

nor Lombard has shown such a financial or logistical burden in litigating in Eastern Washington as to constitute a due process violation. *Id.* at 478 (litigation must be "so gravely difficult and inconvenient" that defendant is severely disadvantaged in comparison to his opponent)(citations omitted).

### Sovereignty issues

Although this factor is important, it is not controlling when defendant is from a foreign country. If it were, a foreign national would never be sued in a U.S. court. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984). It is undeniable that B.C. has an interest in resolving conflicts between its citizens, but LMI is a British organization and Lombard is a federally incorporated company under the laws of Canada. (Ct. Rec. 86 at 4). Nonetheless, the U.S. Supreme Court has cautioned that "great care and reserve should be exercised" when personal jurisdiction is extended into the international community. *Asahi Metal Industry Co., Ltd., v. Superior Court of California*, 480 U.S. 102, 115, 107 S.Ct. 1026 (1987)(citations omitted). The Ninth Circuit also gives great weight to this factor when defendant is a resident of a foreign country. *Core-Vent,* 11 F.3d at 1489 (*citing Asahi, supra*). However, LMI and Lombard have presented no evidence that the resolution of this dispute will impact the sovereignty of British Columbia, Canada or the United Kingdom. Finally, the Supreme Court has held that any conflicts with "fundamental substantive social policies" may be resolved through choice of law rules, not jurisdiction. *Burger King*, 471 U.S. at 477.

The sovereignty issue weighs more heavily when a foreign

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 14

defendant has no contacts or agents or other representatives based in the U.S. *Core-Vent*, 11 F.3d at 1489.   Here, both foreign defendants provide world-wide insurance coverage, with agents throughout the U.S. and Canada.    Sovereignty factors do not weigh against personal jurisdiction.

*Washington's interest in the adjudication*

Washington has a strong and well-established interest in protecting the health and safety of its citizens; to that end, it has a compelling interest in the insurers' obligation to indemnify, especially, as in this case, at the remediation stage of a polluted site within its borders. *Canron, Inc. v. Federal Ins. Co.*, 82 Wn.App. 480, 494, 918 P.2d 937 (1996). For example, Washington State has promulgated regulations that codify this public interest:

> There are many insurance coverage disputes involving Washington insureds who face potential liability for their roles at polluted sites in this state. State and federal mandates exist for cleaning up the environment in order to address the adverse effects of hazardous substances on human health and safety and the environment in general. It is in the public interest to reduce the costs incurred in connection with the environmental claims and to expedite the resolution of such claims. The state of Washington has a substantial public interest in the timely, efficient and appropriate resolution of environmental claims involving the liability of insureds at polluted sites in this state. This interest is based on practices favoring good faith and fair dealing in insurance matters and on the state's broader health and safety interest in a clean environment.

Washington Administrative Code (WAC) § 284-30-900 (2005).

Because indemnification for clean-up costs at Lake Roosevelt is at issue, Washington's interest in this adjudication is compelling. *Canron*, 82 Wn.App. at 494. Further, the Ninth Circuit, in assessing the reasonableness of personal jurisdiction over a foreign insurer

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 15

in an insurance contract dispute case, has found a third party beneficiary of an insurance policy has a great interest in the outcome of insurance coverage litigation.  As a potential third party beneficiary of TCML's insurance coverage in the CERCLA Action, Washington has an obvious interest in the outcome; this interest weighs heavily in favor of personal jurisdiction. *See Farmers*, 907 F.2d at 915.

*Efficient judicial resolution of conflict*

In addition to Lombard and LMI, U.S. insurers Seaton and Continental are joined in this declaratory judgment action.  To dismiss Lombard and LMI arguably would require duplicate litigation: one for the foreign insurers in Canada, one for the American insurers in the U.S.  Many of the factual determinations apply to all insurers.  Adjudication of coverage issues in one forum avoids conflicting or inconsistent findings of fact. *See Contact Lumber v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir. 1990)(citations omitted). Regarding availability of witnesses and documentation, TCML avers it will make its Canadian employees and documents available in the Washington forum.  Judicial efficiency weighs in favor of personal jurisdiction.

*Importance of forum to Plaintiff's interest*

TCML is not a citizen of the U.S. and is not domiciled in Washington.  However, TCML states it prefers the Washington forum where insurance coverage law is more developed and trying the case would not result in piecemeal litigation of the CERCLA Action and insurance coverage.  TCML asserts the case should be tried in the same forum for consistency of factual and legal bases.

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 16

*Existence of an alternative forum*

Both parties agree there is an adequate alternative forum in B.C.  Because both forums are of close proximity, this is a neutral factor.

It is the defendants' burden to rebut TCML's *prima facie* showing of personal jurisdiction.  Based on the facts alleged and the extensive record, the court finds LMI and Lombard have not controverted the alleged facts sufficiently to warrant dismissal.  The "reasonableness" considerations of judicial efficiency in resolution of the dispute, Washington's strong interest in the insurance coverage litigation, and TCML's interest in avoiding duplicate adjudication and inconsistent findings of fact weigh strongly in favor of this court's exercise of specific jurisdiction.[5]  *Ballard*, 65 F.3d at 1502; *Haisten,* 784 F.2d at 1402.

**B.    Motion to Dismiss for *Forum non Conveniens***

LMI and Lombard were joined by Seaton in their motions to dismiss based on *forum non conveniens*.  To prevail in a motion for dismissal based on *forum non conveniens*, the movants must show that (1) an adequate alternate forum exists; (2) the balance of public and private factors favors dismissal; and (3) these showings outweigh the deference shown to plaintiff's choice of forum. *Lockman*

---

[5]   Having found that personal jurisdiction over LMI and Lombard is reasonable, the court declines to address the issue of waiver of objection to personal jurisdiction based on defendants' voluntary participation in state and federal court filings without reservation of right to object to jurisdiction.

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 17

*Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991).

    1.   Existence of Adequate Alternate Forum

It is the moving defendants' burden to show there is an adequate alternative forum.  The remedy must be clear before the case is dismissed by this court.  *Contact Lumber*, 918 F.2d at 1449 (citations omitted).  The requirement is ordinarily satisfied when the defendant is amenable to process in another forum.  *Id.* at 1450.

British Columbia is the proposed alternate forum here; as evidenced by the parallel pending claims for declaratory judgments filed by LMI and Lombard in B.C. Supreme Court (*see e.g.,* Ct. Rec. 135, Ex. A), TCML, LMI and Lombard are amenable to service of process in B.C. and there is a remedy.  TCML does not dispute that B.C. is an adequate forum, but contends defendants have not met their burden in the balance of private/public factors to upset its forum preference.

    2.   Balance of private/public factors

Defendants must make a "clear showing" that, in light of private and public interest factors, adjudication in plaintiff's chosen forum (1) causes "such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent," or (2) is "inappropriate because of considerations affecting the court's own administrative and legal problems."  *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983)(citations omitted).

A plaintiff's choice of forum will not be disturbed unless the private and public interest factors favor dismissal. *Lueck v.*

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 18

*Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001).  Where the district court has considered these factors, and the balancing of these factors is reasonable, the court's decision deserves "substantial deference."  *Id.* at 1143.

The private interest factors are: the residence of the parties and witnesses; the forum's convenience to the parties; access to witnesses, documents and physical evidence; whether unwilling witnesses can be compelled to testify; the cost of bringing witnesses to trial; the enforceability of any judgment; and all other practical factors.  *Id.* at 1145.

TCML and Lombard are federally incorporated Canadian corporations.  LMI's principal place of business is in London.  TCML is domiciled in B.C.  TCML's choice of forum is the U.S. District Court for the Eastern District of Washington.  The court notes that the court in Yakima is approximately 216 miles from TCML's Trail, B.C. facility, the alleged source of environmental damage in Washington.  The court in Spokane is closer to Trail.  Movants request that the action be dismissed to B.C. Supreme Court in Vancouver, B.C., a city approximately 245 miles from the Trail facility and 223 miles from Yakima.  Because of its relative proximity to TCML's choice of forum, the alternative forum does not offer a more convenient location for parties, witnesses, documents or other evidence.

In evaluating accessibility of witnesses and documents, the court considers the "materiality and importance of the anticipated witnesses' testimony and then determine[s] their accessibility and convenience to the forum." *Lueck,* 236 F.3d at 1146.  Again, due to

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 19

the relative proximity of Vancouver to Yakima, and advances in technology, documentation accessibility is not a significant factor. The difference in cost to bring witnesses to Vancouver, B.C. versus Yakima, Washington is not overly burdensome for any of the parties.

Lombard and LMI argue that past employees at the B.C facility and TCML headquarters are not amenable to U.S. subpoena power, and therefore, will not be accessible as witnesses in Washington. However, counsel for TCML has represented at oral argument and in its pleadings that TCML will make past and present employees available in Washington upon reasonable demand. (*See e.g.* Ct. Rec. 105-1 at 2). TCML faces the same issue on its side when trying to compel U.S. environmental experts and regulatory witnesses to testify in B.C. as to the nature of damage and when the damage occurred. These witnesses are necessary to determine if and when coverage was triggered and to testify to the costs of remediation. Evaluating materiality and importance, the accessibility of these U.S. "fact" witnesses is more important than any insurer "fact" witnesses, since interpretation of the insurance policies is a question of law. *McHugh v. United Service Auto Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999). Since the insurers cannot compel or facilitate the presence of U.S. regulatory personnel in B.C. court, this factor weighs against dismissal.

Regarding enforceability, the parties have differing opinions regarding the enforceability of a foreign judgment in B.C. *See infra,* at 24-25. Because this is a decidedly legal issue and the divergent opinions, at this juncture, are speculative, the court declines to give significant weight to this factor. Further, TCML,

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 20

the party most affected by the alleged lack of enforceability of a foreign judgment, does not appear to consider it a serious obstacle to adjudication in this court.

The public interest factors considered in the *forum non conveniens* analysis are: local interest in the lawsuit; the court's familiarity with governing law; the burden on local courts and juries; the congestion in the court; and the costs of resolving disputes unrelated to the forum. *Lueck*, 236 F.3d at 1147.

As discussed above, Washington State has a very compelling interest in the coverage dispute. This is evidenced by the policy statements in administrative regulations, the *Canron* case, and by the amount of media coverage given TCML's alleged role in Lake Roosevelt contamination. (Ct. Rec. 126-2, Ex. 3). The foreign insurers have not presented any evidence indicating this degree of interest in British Columbia.

Regarding the court's familiarity with governing law, TCML contends a choice of law determination should be made. However, the requirement of a choice of law analysis applies only to cases involving statutes that require venue in the United States, such as the Jones Act, or the Federal Employees' Liability Act. *Lueck,* 236 F.3d at 1148. Where no such statute applies, "the choice of law determination is given much less deference on a *forum non conveniens* inquiry." *Id*. Washington courts also have held a choice of law analysis is not necessary in a *forum non conveniens* determination. *Hill v. Jawanda Transport Ltd.*, 96 Wn.App 537, 546 (1999). It should be emphasized that the law to be applied relates to insurance contract interpretation, not environmental law or CERCLA. As this

1  case does not involve a U.S. statute requiring venue within the

2  U.S., the court declines to engage in a lengthy choice of law

3  analysis at this time.

4      Finally, because claimed environmental damage is in Washington,

5  the insured is domiciled in B.C., and alleged source of the injury

6  is in B.C., the dispute over insurance coverage cannot be

7  characterized as "unrelated" to either forum.  Consequently, the

8  burden on local courts and juries is not a significant factor in the

9  balance.  Given the proximity of plaintiff's choice of forum to

10 defendants' preferred forum, the cost of litigation is a neutral

11 factor.

12     3.   Deference to plaintiff's choice of forum

13     The U.S. Supreme Court has held that the presumption in favor

14 of a plaintiff's choice of forum applies with less force when the

15 plaintiff is a foreign citizen.  *Piper Aircraft Co. v. Reyno*,454

16 U.S. 235, 255, 102 S.Ct. 252 (1981). TCML is a Canadian corporation.

17 "Less deference," however, "is not the same thing as no deference."

18 *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

19     Despite TCML's status as a foreign plaintiff, consideration and

20 balance of the public and private interest factors weigh against

21 dismissal on the basis of *forum non conveniens*.  The distance

22 between Eastern Washington and Vancouver, B.C. is negligible, and

23 the Trail facility and Lake Roosevelt lie almost equidistant from

24 the competing forums.  The burden on LMI, Lombard and Seaton to

25 litigate this matter in Eastern Washington does not rise to the

26 level of oppressive or vexatious.  The court finds no logistical,

27 administrative or legal problems compelling enough to upset TCML's

28 ORDER DENYING DEFS' MOTIONS TO DISMISS,
   GRANTING IN PART DEFS' MOTION TO STRIKE,
   AND GRANTING PL'S MOTION FOR LEAVE TO
   AMEND, *ETC*. - 22

1  choice of forum.

2  **C.   Motion to Strike Certain Evidence from the Record**

3       Prior to oral argument, Lombard filed a motion to strike
4  certain evidence submitted by TCML in its opposition to LMI and
5  Lombard's motions to dismiss.  (Ct. Rec. 159).  The challenged
6  evidence consists of a 1993 declaration by former Washington State
7  Attorney General, Christine Gregoire (Ct. Rec. 105, Ex. A), and
8  portions of a declaration by Anne Chalmers, Risk Security and
9  Insurance Director for TCML.  Lombard contends the evidence is
10  hearsay, lacks foundation and is not relevant.[6]  Having considered
11  the briefs and counsels' arguments, the court finds Ms. Gregoire's
12  declaration admissible.   Fed.R.Evid. 43(e).   As evidence of
13  Washington's interest in insurance coverage adjudication, Ms.
14  Gregoire's declaration is relevant. As Attorney General, testifying
15  under the penalty of perjury, Ms. Gregoire was certainly qualified
16  to testify regarding Washington State public policy.  Ms. Gregoire
17  reiterated this policy statement in a 2001 declaration as part of
18  more recent litigation.  Further, WAC § 284-30-900 and the court in
19  *Canron* reflect the policy statements made by Ms. Gregoire; the
20  exclusion of Ms. Gregoire's declaration would not affect the court's
21  final determination.

22       As for Ms. Chalmers' declaration, to the extent her declaration

23  _____

24       [6]  The court notes that all parties in this matter have
25  submitted voluminous declarations and exhibits containing varying
26  degrees of hearsay and legal conclusions.  The court is presumed
27  to consider only admissible evidence in its determinations.

28  ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 23

1  expresses legal conclusions, Lombard's motion is granted.   Ms.

2  Chalmers, however, is qualified to attest to facts regarding TCML

3  records and practices dealing with risk management and insurance

4  coverage.[7]   Further, the majority of her declaration is her own

5  testimony based on personal knowledge, experience, and expertise,

6  not hearsay.  Fed.R.Evid. 801.

7  **D.**    **Motion for Leave to File THIRD AMENDED COMPLAINT**

8       On February 28, 2006, TCML filed a motion for leave to file a

9  THIRD Amended Complaint.   (Ct. Rec. 108).   The basis for the

10 amendment is to add a breach of contract claim against Lombard and

11 to supplement the allegations (including jurisdictional allegations)

12 to reflect information that TCML discovered in the process of

13 litigation.   Lombard opposes the amendment, claiming that amendment

14 is futile.

15      A party may amend its complaint, after the first amendment of

16 right, "by leave of the court . . . and leave shall be freely given

17 when justice so requires."  Fed.R.Civ.P. 15(a).  The Ninth Circuit

18 has a strong policy of extreme liberality in the amendment of

19 complaints to "facilitate decision on the merits rather than on

20 pleadings or technicalities."  *DCD Programs, Ltd. v. Leighton*, 833

21 F.2d 183, 186 (9th Cir. 1987) (citations omitted). Leave to amend is

22 left to the sound discretion of the court. *Lueck*, 236 F.3d at 1143.

23

24      [7]  During oral argument, the parties agreed that Ms.

25 Chalmers' mis-statement regarding "annual occurrences" be

26 stricken.  (*See* Ct. Rec. 166 at 9).

27

28 ORDER DENYING DEFS' MOTIONS TO DISMISS,
   GRANTING IN PART DEFS' MOTION TO STRIKE,
   AND GRANTING PL'S MOTION FOR LEAVE TO
   AMEND, *ETC*. - 24

In its pleadings, Lombard asserts that the B.C. Supreme Court will not enforce a foreign judgment that is not for a specific sum. Since TCML's U.S. action is for declaratory judgment, the insurers argue it may not be enforceable.  (Ct. Rec. 94).  TCML denies there is any merit to Lombard's assertion, but it wants to amend its complaint to remedy this alleged defect by adding a breach of contract claim against Lombard.  Also in support of the amendment, TCML argues that at the time it filed its SECOND Amended Complaint in federal court, Lombard had not filed its claim in B.C. seeking a declaratory judgment that it has neither duty to defend nor indemnify. (*See* Ct. Rec. 55 and 135-2, Ex. A).  TCML characterizes Lombard's claim in B.C. as an anticipatory repudiation because Lombard has, in effect, denied its coverage obligations under the Umbrella Policies in its pleadings; thus, TCML argues, amendment is proper.

There are four limited exceptions to the presumption in favor of leave to amend: bad fath, undue delay, prejudice to the opposing party, and futility of amendment.  *DCD,* 833 F.2d at 186.  Lombard argues futility, primarily.[8]  To prevail on the futility argument,

---

[8]  Lombard also claims lack of good faith, asserting that TCML is filing this leave to amend as a strategy ploy to undermine its motion *forum non conveniens* motion, but does not support this argument with legal authority or specific reasoning. (Ct. Rec. 125-1 at 7).  Lombard also accuses TCML of bad faith because the breach of contract claim is only against it, and not LMI. TCML

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 25

Lombard must demonstrate "beyond any doubt" that TCML could not prevail in its claim.  Lombard argues that a breach of contract claim is not ripe because there is no evidence that TCML has incurred or will incur any expenses related to the CERCLA Action. This argument is without merit.  Under Washington law, an insurer's duty to defend an action brought against the insured arises when a complaint alleges facts, if proven, that could impose liability within the policy's coverage. *Unigard Ins. Co. v. Leven*, 97 Wn.App. 417, 425 (1999).  Not only is there such a complaint, there is the U.S. District Court's ruling in *Pakootas* that TCML is liable under CERCLA.  TCML has incurred expenses in defending the CERCLA Action to date.  Further, it is clear from the B.C. Supreme Court pleadings that Lombard is aware of the CERCLA Action and is denying that it has a duty to defend or indemnify.

The proposed Third Amended Complaint includes the *new* fact that Lombard has filed the claim in B.C. for declaratory judgment that it is not obligated to defend or indemnify TCML.  (Ct. Rec. 108-1 at 14 and Ex. A at 15).  This fact was not established until after the

replies that Lombard has the primary policies and has filed the declaratory judgment claim in B.C.; LMI filed a claim for declaratory judgement also, but its Excess Umbrella Policies do not attach until its exposure exceeds $6 million.  The court is not persuaded that TCML's proposed amendment rises to the level of bad faith.

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 26

Second Amended Complaint was filed.  Regarding the jurisdictional facts, the Ninth Circuit's policy of "extreme" liberality allows these amendments also.  The facts proposed by TCML are substantive in establishing personal jurisdiction under statutes other than the long arm statute, *e.g.* RCW 4.28.080(10) and RCW 48.05.215(1).  (Ct. Rec. 108-1, Ex. A at 6-8; Ct. Rec. 134 at 8).

Finally, Lombard has not made a showing of prejudice caused by the proposed amendments.  The instant case has not progressed to the scheduling order stage, the amendment will not negatively impact an existing discovery schedule, and briefing on the substantive issues has not been submitted.  A trial date is not set, so an amendment will not cause delay in the trial.  *See Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991).  Given the liberal amendment policy and substance of the new factual evidence, leave to amend is appropriate. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962)(it is the spirit of the Federal Rules that leave sought should be freely given).

Accordingly, consistent with the decision above,

**IT IS ORDERED:**

1. Defendant Lombard's Motion to Dismiss for Lack of Personal Jurisdiction (**Ct. Rec. 62**) is **DENIED**.

2. Defendant Lombard's Motion to Dismiss Based on the Doctrine of *Forum non Conveniens* (**Ct. Rec. 71**) is **DENIED**.

3. Defendant LMI's Motion to Dismiss for Lack of Personal Jurisdiction (**Ct. Rec. 57**) is **DENIED**.

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 27

4.      Defendant LMI's Motion to Dismiss Based on the Doctrine of *Forum non Conveniens* (**Ct. Rec. 64**) is **DENIED.**

5.      Defendant Lombard's Motion to Strike Certain Evidence (**Ct. Rec. 159**) is **DENIED** in part and **GRANTED** in part.

6.      Plaintiff's Motion for Leave to File THIRD AMENDED COMPLAINT (**Ct. Rec. 108**) is **GRANTED**.

**IT IS FURTHER ORDERED** that the District Court Executive shall file this Order and provide a copy to counsel for plaintiff and defendants.

DATED this   1st   day of May 2006.


                                          *S/ Lonny R. Suko*
                                      LONNY R. SUKO
                            UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFS' MOTIONS TO DISMISS,
GRANTING IN PART DEFS' MOTION TO STRIKE,
AND GRANTING PL'S MOTION FOR LEAVE TO
AMEND, *ETC*. - 28