UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TECK METALS, LTD., <br><br> Plaintiff, <br><br> vs. <br><br> CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AND CERTAIN LONDON MARKET INSURANCE COMPANIES, <br><br> Defendants. | No. CV-05-411-LRS <br><br> **ORDER RE MOTIONS FOR SUMMARY JUDGMENT RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"** |

**BEFORE THE COURT** are Plaintiff's and Defendants' Cross-Motions For Summary Judgment Re Environmental Response Costs As "Damages" (Ct. Rec. 374 and 419). These motions were heard with oral argument on July 22. Mark J. Plumer, Esq., argued for the Plaintiff. Barry N. Mesher, Esq., argued for Defendants.

**I. BACKGROUND**

The parties agree there is no conflict between Washington and British Columbia (B.C.) law on this issue and therefore, Washington law applies. In Washington, as a general rule, Comprehensive Environmental Response,

**ORDER RE SUMMARY JUDGMENT MOTIONS
RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 1**

Compensation and Liability Act (CERCLA)[1] response costs constitute "damages" under liability insurance policies. *Boeing Co. v. Aetna Cas. And Sur. Co.*, 113 Wn.2d 869, 887-88, 784 P.2d 507(1990); *Weyerhauser Co. v. Aetna Cas. and Sur. Co.*, 123 Wn.2d 891, 900-01, 874 P.2d 142 (1994). Teck Metals, Ltd. (Teck) asserts the same holds true in the captioned matter, and the court should rule as a matter of law that the response costs Teck has incurred pursuant to its Settlement Agreement with the Environmental Protection Agency (EPA) fall within the meaning of the term "damages" contained in the London Market Insurance policies. London Market Insurers (LMI) assert, however, that considering the particular factual circumstances here, in conjunction with the particular language contained in the policies at issue here, the response costs for which Teck seeks reimbursement are not compensable as "damages."

The London Market Insurance policies provide:

> The Company hereby agrees, subject to the limitations, terms and conditions hereinafter mentioned, to **indemnify** the Assured for all sums which the Assured shall be **obligated** to pay by **reason of the liability**
>
> (a) imposed upon the Assured by law, or
> (b) **assumed under contract or agreement by the Named Assured**
>   . . .
>
> for **damages**, direct or consequential[,] and **expenses**, all as more **fully defined by the term "ultimate net loss"** on account of:-
>
> (i) Personal injuries, including death at any time resulting therefrom,
>
> (ii) Property Damage,
>
> (iii) Advertising Liability,
>
> caused by or arising out of each occurrence happening anywhere in the world.

(Emphasis added).

---

[1] 42 U.S.C. §9601 *et. seq*.

**ORDER RE SUMMARY JUDGMENT MOTIONS**
**RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 2**

"Ultimate Net Loss" is defined as follows:

> The term "Ultimate Net Loss" shall mean the total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, **property damage** or advertising liability **claims**, **either through adjudication or compromise**, and shall also include . . . expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of **claims and suits** which are paid as a consequence of any occurrence covered hereunder . . . .
>
> The Company shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance.

(Emphasis added).

In June 2006, Teck (aka "Teck Canada," formerly known as TCML (Teck Cominco Metals Limited)) reached a Settlement Agreement with the EPA regarding Upper Columbia River (UCR) Site investigation activities in such a manner that Teck preserved the argument that it was not subject to jurisdiction under CERCLA. Teck agreed that its United States subsidiary, Teck American, Inc., (formerly Teck Cominco American, Inc.), would perform a RI/FS (Remedial Investigation/Feasibility Study) at the UCR Site "consistent" with CERCLA requirements, specifically consistent with the National Contingency Plan, 40 C.F.R. Part 300. In exchange, the EPA agreed to withdraw its UAO (Unilateral Administrative Order) against Teck. The Settlement Agreement calls for Teck American to carry out the investigation work, but Teck, via a separate "Services Agreement" with Teck American, is obligated to bear all of the costs of complying with the Settlement Agreement. Furthermore, pursuant to the Settlement Agreement, Teck is required to perform all of Teck American's obligations in the event that Teck becomes insolvent or is otherwise unable to perform under the Settlement Agreement.

//
//

**ORDER RE SUMMARY JUDGMENT MOTIONS**
**RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 3**

## II. DISCUSSION

### A. Pursuant to the Settlement Agreement with EPA, is Teck "obligated by reason of liability" to pay "damages" for "property damage?"

LMI assert that per the terms of the Settlement Agreement, Teck's liability for RI/FS costs is wholly contingent and depends on whether Teck American "files for bankruptcy protection, is declared insolvent, or otherwise is unable to fulfill its obligations under the Settlement Agreement." According to LMI, Teck American is the only entity "legally obligated" to pay the RI/FS costs as required by the policies. LMI contend that any payment by Teck to Teck American is voluntary and falls outside the scope of the policies.

At the time Teck entered into the Settlement Agreement with EPA, it was still awaiting the outcome of its Ninth Circuit appeal from this court's decision which found that it was appropriate to apply CERCLA extraterritorially to Teck's smelting operation in Trail, B.C.. When Teck entered into the Settlement Agreement, it did not know what the outcome of the appeal would be. Understandably, Teck was only willing to enter into an arrangement with EPA that would not be construed as a concession to what was then understood to be an extraterritorial application of CERCLA to Teck's Trail operation. Of course, the Ninth Circuit ultimately ruled that Teck was subject to liability, not because of its activity in B.C., but because of the releases occurring in the U.S. at the UCR Site. Absent the Settlement Agreement, the Ninth Circuit's decision would have paved the way for EPA to enforce the UAO against Teck and compel it to perform and fund an RI/FS at the UCR Site.

LMI take a very narrow, and ultimately unjustified, view of what constitutes an obligation to pay damages by **"reason of the liability** . . . **assumed under contract or agreement by the Named Assured**." While Teck American is

**ORDER RE SUMMARY JUDGMENT MOTIONS
RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 4**

clearly the primary obligor under the EPA Settlement Agreement, Teck is also a party to the agreement as the secondary obligor (guarantor) and, by virtue of its separate agreement with Teck American, is the entity ultimately paying the costs of the RI/FS.  Teck's guaranty represents a legal obligation by reason of liability assumed under the EPA Settlement Agreement.  The Settlement Agreement does not, as asserted by LMI, absolve Teck of "any legal liability for the RI/FS."

LMI contend insurance coverage for the RI/FS costs is "potentially available" from Teck American's insurers.  One must ask if it would be realistic for Teck American to expect to obtain compensation from its insurers for assuming a liability that is unrelated to any conduct on its part.  Teck American is not responsible for any of the property damage alleged to have occurred at the UCR Site.  Under the circumstances, it is reasonable for Teck to seek coverage from its insurers considering it is Teck's activity which is alleged to have caused the damage at the UCR Site and which gives rise to potential CERCLA liability.  Furthermore, it is ultimately Teck which is paying the RI/FS costs.

There is no basis for application of judicial estoppel against Teck.  This court never made a finding in any of it orders entered in *Pakootas v. Teck Cominco Metals Ltd.*, CV-04-256-LRS, that Teck was not legally liable for RI/FS costs.  Teck denied liability under CERCLA in the Settlement Agreement with EPA but again, this was understandable considering the posture of the case.  Teck's actual liability under CERCLA has yet to be adjudicated.  All the Ninth Circuit did was affirm this court's decision that the plaintiffs in *Pakootas* have stated claims upon which relief can be granted.  Actual adjudication of Teck's liability to the *Pakootas* plaintiffs is not necessary for there to be insurance coverage, and the language of the policies recognizes as much.

The EPA Settlement Agreement represents a settlement of a "property

**ORDER RE SUMMARY JUDGMENT MOTIONS
RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 5**

damage **claim**" through "adjudication or compromise." The Settlement Agreement is an attempt to minimize Teck's exposure to CERCLA liability and in that regard, it is beneficial to LMI. Teck's efforts to defend itself cannot be used by LMI against Teck in seeking to deny coverage. Although the Settlement Agreement may have allowed Teck to avoid conceding jurisdiction under CERCLA and to avoid assuming liability under CERCLA, it did not, as asserted by LMI, allow Teck to avoid assuming any legal liability to perform or fund the RI/FS.

The fact this court awarded attorneys' fees to the *Pakootas* plaintiffs based on a conclusion they were "prevailing parties" against Teck because of the EPA Settlement Agreement, and in spite of the UAO having been withdrawn, shows this court considered Teck to be liable for RI/FS costs under the agreement. In concluding the *Pakootas* plaintiffs were "prevailing parties," this court found the EPA Settlement Agreement was the equivalent of a judicial judgment and that it was judicially enforceable against Teck. (Ct. Rec. 295 and 359 in CV-04-256-LRS).

**B. Is the RI/FS being performed under CERCLA such that the RI/FS costs are covered?**

Based on the *Boeing* and *Weyerhauser* cases, LMI contend the RI/FS costs are not covered "damages" because they were not incurred "under CERCLA."

It is true the RI/FS is not being conducted pursuant to an order from the EPA. It is not being conducted pursuant to the UAO previously issued by EPA. It is nonetheless being carried out consistent with CERCLA's National Contingency Plan and therefore, the costs of the RI/FS are being paid as the result of action taken "under CERCLA." The RI/FS is not being performed wholly outside of

**ORDER RE SUMMARY JUDGMENT MOTIONS RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 6**

CERCLA authority.[2] Moreover, the EPA Settlement Agreement represents compromise of a CERCLA liability property damage **claim**. The sums which Teck has obligated itself to pay in settlement of that claim constitute "damages" pursuant to the language of the policies. The policies require that the response costs consist of sums which Teck "shall be **obligated** to pay by **reason of . . . liability assumed under contract or agreement by [Teck]** . . . for **damages . . .** on account of . . . Property Damage . . . caused by or arising out of each occurrence happening anywhere in the world." (Emphasis added). They are sums which Teck has "become obligated to pay by reason of . . . **property damage** . . . <u>**claims . . . either through adjudication or compromise**</u> . . . ." (Emphasis added).[3]

      The *Boeing* and *Weyerhauser* cases do not dictate otherwise. In the *Boeing* case, the policyholders were sued by the EPA in federal district court. Eventually, the court entered a Consent Decree between EPA and the policyholders for cleanup of the site at issue. The policyholders than sued their insurers for indemnification of their response costs. In answer to a certified question from the Western District of Washington, the Washington Supreme Court concluded that response costs in response to actual releases of hazardous wastes were "damages"

---

[2] In its June 25, 2009 order in *Pakootas*, this court noted it was undisputed that EPA's UAO and the EPA Settlement Agreement require essentially the same basic action, that being the completion of an RI/FS in conformity with EPA's Statement of Work (SOW). (Ct. Rec. 359 at p. 4).

[3] The fact that EPA is not a plaintiff in *Pakootas* is irrelevant. Teck assumed liability for the RI/FS costs to effectively settle the CERCLA claim asserted by the *Pakootas* plaintiffs seeking to enforce EPA'S UAO. The settlement rendered moot the claims for declaratory and injunctive relief asserted by the *Pakootas* plaintiffs regarding the UAO.

**ORDER RE SUMMARY JUDGMENT MOTIONS**
**RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 7**

within the meaning of the CGL (Comprehensive General Liability) policies at issue. 113 Wn.2d at 888. Since the response costs were paid pursuant to a Consent Decree, they were clearly paid as a result of liability "imposed by law." The case at bar obviously does not involve a Consent Decree. It involves a Settlement Agreement.

*Weyerhauser* involved neither a Consent Decree or a formal Settlement Agreement. Weyerhauser voluntarily engaged in the cleanup of pollution damages in cooperation with governmental environmental agencies. There was never an overt threat of formal legal action from these agencies. The Washington Supreme Court held the response costs incurred by Weyerhauser were covered under the CGL policies because they were sums which it was obligated to pay by reason of the liability "imposed by law" for damages on account of property damage. The court concluded that "[s]uch policies can reasonably be read to provide coverage for actions to clean up pollution damages required under environmental statutes which impose strict liability for such cleanup." 123 Wn.2d at 896-97.[4] In the case at bar, the operative provision is not the obligation to pay sums by reason of the

---

[4] According to the Washington Supreme Court:

> The insurance contracts provide coverage when the policyholder becomes obligated to pay by reason of the liability "imposed by law." The policy language does not specify whether this liability must be imposed by formal legal action (or threat of such) or by a statute which imposes liability. In the case where there has been property damage and where a policyholder is liable pursuant to an environmental statute, a reasonable reading of the policy language is that coverage is available, if it is not otherwise excluded.

*Weyerhauser*, 123 Wn.2d at 913.

**ORDER RE SUMMARY JUDGMENT MOTIONS**
**RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 8**

Case 2:05-cv-00411-LRS    Document 517    Filed 08/10/10

liability "imposed by law" for damages on account of property damage, but rather the obligation to pay sums by reason of the liability "**assumed under contract or agreement.**" (Emphasis added).

Weyerhauser had not been sued, had not been threatened with suit, and was never the subject of any type of administrative order from a government environmental agency. The court concluded that did not matter, relying on a Maryland case, *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 625 A.2d 1021 (1993), wherein the company (Bausch & Lomb) had worked in a cooperative arrangement with the state in order to avoid being subjected to an administrative order to perform the work. A similar situation exists here in that Teck entered into a Settlement Agreement with EPA in order to avoid being subjected to the UAO already issued. On the other hand, while Teck had not been immediately threatened with legal action by EPA, it was, at the time of its settlement with EPA, facing legal action by the *Pakootas* plaintiffs who were seeking to judicially enforce the UAO. Unlike Weyerhauser, Teck was facing, and continues to face, legal action. This legal action prompted Teck to reach a settlement with EPA.

**C. Are the RI/FS costs "on account" of "property damage?"**

LMI assert that before RI/FS costs may be covered under the policies, it must first be determined whether there has been "property damage" caused by an "occurrence" as those terms are defined in the policies.[5] According to LMI, the

---

[5] The policies define "Property Damage" as follows:

The term "Property Damage", wherever used herein shall mean loss or direct damage to or destruction of tangible property

**ORDER RE SUMMARY JUDGMENT MOTIONS**
**RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 9**

"property damage" issue will be decided in *Pakootas* and the "occurrence" issue- whether Teck did not expect and intend contamination at the UCR Site- will be decided at a later date in the captioned litigation.

LMI maintain that *Boeing* and *Weyerhauser* require proof of actual property damage before there can be recovery of environmental response costs. According to LMI, Teck cannot meet this burden at this time because there has been no judicial determination in *Pakootas* of property damage, only allegations. While allegations may be adequate to trigger a duty to defend, LMI say they are not enough to trigger a duty to indemnify. This court disagrees.

Neither *Boeing* or *Weyerhauser* require proof of actual property damage as a condition precedent to insurance coverage for RI/FS costs which the insured has agreed to pay as part of a settlement. The language in the LMI policies sets forth no such requirement. Instead, "damages," as defined by the term "ultimate net loss," is "[t]he total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of . . . **property damage** . . . **claims**, **either through adjudication or compromise** . . . ." (Emphasis added). A settled **claim** of property damage is sufficient. "The plain text of the policies . . . belies [the insurer's] insistence on litigated proof of injury." *Uniroyal, Inc. v. Home Ins. Co.*, 707 F.Supp. 1368, 1378 (E.D. N.Y. 1988).

*Woo v. Fireman's Fund Insurance Co.*, 161 Wn.2d 43, 164 P.3d 454 (2007), relied upon by LMI, did not involve a settlement. As stated in *Woo*, "the duty to indemnify 'hinges on the insured's *actual liability* to the claimant and actual *coverage* under the policy." *Id*. at 53 (emphasis in text). Here, Teck has assumed, through a settlement agreement with EPA, liability for RI/FS costs by reason of

---

(other than property owned by the Named Assured).

**ORDER RE SUMMARY JUDGMENT MOTIONS**
**RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 10**

the property damage **claim** asserted by the EPA and/or the *Pakootas* plaintiffs. Teck is actually liable to the EPA and hence, the RI/FS costs constitute "damages" under the policies.

"Property Damage" must be "caused by or aris[e] out of each occurrence happening anywhere in the world." Teck acknowledges that whether there has been an "occurrence" is a question for a later time and is not something it seeks to resolve now on summary judgment. Whether there was a qualifying "occurrence" depends on whether there was a "happening" which "unexpectedly and unintentionally" resulted in property damage.[6] The question for future resolution is whether, assuming there was property damage, Teck did not expect or intend the same to occur from any activity for which it is responsible.

### D. Are the RI/FS costs "expenses" (defense costs) as opposed to "damages?"

As noted above:

> The term "Ultimate Net Loss" shall mean the total sum which the Assured, or any company as his insurer, or both, become obligated to pay by reason of personal injury, property damage or advertising liability claims, either through adjudication or compromise, **and shall also include . . . expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation, settlement, adjustment and investigation of claims and suits which are paid**

---

[6] According to the policies:

The term "Occurrence" wherever used herein shall mean an accident or a happening or an event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage, or advertising liability during the policy period. All such exposure to substantially the same general conditions existing or emanating from one premises location shall be deemed one occurrence.

**ORDER RE SUMMARY JUDGMENT MOTIONS
RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 11**

**as a consequence of any occurrence covered hereunder . . . .**

The Company shall not be liable for **expenses** as aforesaid when such **expenses** are included in other valid and collectible insurance.

(Emphasis added).

As discussed previously, RI/FS costs represent "damages" as opposed to "expenses." The payment of RI/FS costs represents settlement of a claim in itself, that being a CERCLA liability property damage claim. The RI/FS costs are not "expenses . . . for settlement" of a claim. They are not expenses incurred in the process of settling a claim.

Nothing in Washington Administrative Code (WAC) 284-30-930(3) purports to classify payment of RI/FS costs pursuant to a settlement with EPA as defense costs, including investigation costs incurred in defense of a claim. When a particular claim is settled, it is no longer being defended. The RI/FS costs being paid pursuant to the Settlement Agreement with EPA are not being paid in defense of a claim because the claim has been settled. The RI/FS costs do not represent investigation costs incurred in defense of a claim. They are costs to be paid as settlement of a claim. At that stage, it is no longer the investigation of a claim, but the settlement of a claim. Consequently, there is no inconsistency in Teck having previously alleged that its primary insurer (Lombard) was "obligated, at its own expense, to defend the Environmental Claims, including the obligation to pay investigation costs and legal expenses incurred by TCML in connection with the Environmental Claims (the 'duty to defend')." To the extent Teck obtained defense costs from Lombard, including investigative costs, prior to its Settlement Agreement with EPA, that appears to have been proper and any such costs appear distinct from the RI/FS costs which Teck has now obligated itself to pay as part of the Settlement Agreement. The same result holds true whether the insured is a

**ORDER RE SUMMARY JUDGMENT MOTIONS**
**RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 12**

Washington resident (to which WAC 284-30 specifically applies), or a non-Washington resident like Teck.

Because the payment of RI/FS costs represents "damages" as opposed to "expenses," it is not necessary to consider whether "expenses are included in other valid and collectible insurance."

### III. CONCLUSION

The court finds as a matter of law that the response costs Teck has incurred pursuant to its Settlement Agreement with the EPA fall within the meaning of "damages" contained in the LMI policies. Teck acknowledges it is not requesting a ruling that LMI have a present duty to indemnify Teck, and the court is not ruling as such.

Teck suggests the court's ruling will dispose of several of the affirmative defenses asserted by LMI and asks that those defenses be dismissed. While that may be true as to some of the defenses, or may ultimately turn out to be true with regard to other defenses, the court declines to formally dismiss particular defenses at this time. Not dismissing certain affirmative defenses should not detract from the court's ruling and appears unnecessary.

Plaintiff's Motion For Summary Judgment On Environmental Response Costs As "Damages" (Ct. Rec. 374) is **GRANTED** and Defendants' Motion For Summary Judgment On Environmental Response Costs As "Damages" (Ct. Rec. 419) is **DENIED**. A Fed. R. Civ. P. 56(f) continuance is not necessary as the court's ruling is based solely on the language of the policies, certain documents related to the RI/FS Settlement Agreement, prior court orders in *Pakootas*, and the applicable law. Defendants' request for a Rule 56(f) continuance is **DENIED** as moot.

**ORDER RE SUMMARY JUDGMENT MOTIONS**
**RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 13**

1  //

2  //

3  //

4  **IT IS SO ORDERED.** The District Court Executive is directed to enter this order and to provide copies to counsel of record.

DATED this  9th  day of August, 2010.

          *s/ Lonny R. Suko*
          LONNY R. SUKO
          Chief United States District Court Judge

**ORDER RE SUMMARY JUDGMENT MOTIONS
RE ENVIRONMENTAL RESPONSE COSTS AS "DAMAGES"- 14**